IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EDUARDO VELA, IDOC # B15180, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   CIVIL NO. 11-710-GPM |
| | ) |
| BRIAN DAVIS, et al., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff Eduardo Vela, a prisoner in the custody of the Illinois Department of Corrections who currently is serving a sentence at the Shawnee Correctional Center of nine years' imprisonment for manual delivery of cannabis, brings this action pro se pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights by persons acting under color of state law. This case is before the Court for screening pursuant to 28 U.S.C. § 1915A, which provides, in relevant part:

> (a) Screening. – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) Grounds for dismissal. – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted[.]

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on

its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Though a court must accept a plaintiff's factual allegations as true, "some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Also, courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. The factual allegations of a pro se complaint must be liberally construed. *See Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

According to the allegations of Vela's pro se complaint, on February 9, 2009, Defendant Brian Davis, an inspector for the Southeastern Illinois Drug Task Force, procured an order of the Circuit Court of the Fourth Judicial Circuit, Clay County, Illinois, authorizing Davis to wiretap Vela's telephone and other conversations on the grounds that there was probable cause to believe that Vela was trafficking in cannabis. Vela alleges that the order was obtained using false statements procured by Davis from a confidential source, Lester Jones, who told Davis that in 2005 Vela was trafficking in cannabis mailed to him in quarter-pound packages by relatives of Vela's residing in Texas. According to Vela, Davis's statement in support of his application for the February 9, 2009, order was false because in 2005 Vela was incarcerated in Missouri and therefore could not have met Jones at that time. On May 19, 2009, a warrant was issued by the Clay County Circuit Court for Vela's arrest for trafficking in cannabis. On May 21, 2009, Vela was arrested in Hidalgo County, Texas, based on the Clay County warrant. On August 23, 2009, the Hidalgo County authorities

released Vela to the custody of Defendant James Sulsberger, the Sheriff of Clay County, so that Vela could be transported by automobile to Clay County.  According to Vela, on August 24, 2009, while Sulsberger was driving Vela back to Clay County, Sulsberger asked Vela how he, Vela, came to be involved in a criminal conspiracy to distribute drugs.  When Vela replied that the matter was "none of [Sulsberger's] goddam busine[ss]," Sulsberger supposedly said, "[Y]ou smrat [sic] ass punk, you Mexicans [are] always coming over here in my country committing crimes."  Doc. 1 at 9 ¶ 14, ¶ 15.  Vela alleges that when he called Sulsberger "a racist bastard," Sulsberger stopped the car in which he and Vela were riding and made Vela get out of the car.  *Id*. at ¶ 16.  According to Vela, Sulsberger then held his service pistol to Vela's head and said, "I ought to kill you and say you tried to escape. I would save the state some money."  *Id*. at ¶ 19.  When Vela begged Sulsberger for his life, Sulsberger removed his gun from Vela's head, but punched Vela in the stomach and the groin, saying that "maybe you will learn to respect an officer now."  *Id*. at ¶ 21.  Named as a Defendant in the case, in addition to Davis and Sulsberger, is the Village of Louisville, Illinois ("Louisville").

      With respect to Vela's claim against Davis, it appears that this claim is barred by the familiar rule that a plaintiff convicted or sentenced for an offense may not bring an action for damages under 42 U.S.C. § 1983 where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," save when "the plaintiff can demonstrate that the conviction or sentence has already been invalidated."  *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).  Typically, whether a conviction precludes a Section 1983 claim for unlawful arrest depends upon the facts of the case at hand.  *See, e.g., Wiley v. City of Chicago*, 361 F.3d 994, 997 (7th Cir. 2004) ("[A] wrongful arrest claim does not necessarily undermine a conviction"); *Booker v. Ward*, 94 F.3d

1052, 1056 (7th Cir. 1996) ("[A] wrongful arrest claim . . . does not inevitably undermine a conviction; one can have a successful wrongful arrest claim and still have a perfectly valid conviction."). *See also Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) (teaching that whether a plaintiff's claim is *Heck*-barred should not be evaluated by seeing if there is a "theoretical possibility" that the plaintiff can advance a theory of liability that does not undermine the legitimacy of the plaintiff's criminal conviction, but rather should be evaluated by seeing whether the plaintiff's theory includes "allegations that are inconsistent with the conviction's having been valid"; if the latter, "*Heck* kicks in and bars his civil suit."). In this instance, for Vela to succeed on his false arrest claim, it would necessarily impugn the validity of his conviction on the facts of this case. The actual existence of probable cause defeats a Section 1983 claim for false arrest, false imprisonment, or malicious prosecution. *See Morfin v. City of E. Chicago*, 349 F.3d 989, 997 (7th Cir. 2003); *Mark v. Furay*, 769 F.2d 1266, 1268-69 (7th Cir. 1985) (collecting cases). Thus, for Vela to prevail on his false arrest claim against Davis, Vela would have to convince a trier of fact that no probable cause existed for his arrest. Therefore, Vela's claim against Davis is barred by *Heck* and will be dismissed by the Court.[1]

---

1. The Court notes an additional potential bar to Vela's claim against Davis, namely, collateral estoppel. In general, federal courts are to give judgments of state courts the same preclusive effect in federal actions that they would be given under the rendering state's own law. *See Allen v. McCurry*, 449 U.S. 90, 95-96 (1980); *Jones v. City of Alton, Ill*., 757 F.2d 878, 884 (7th Cir. 1985). Under Illinois law, the doctrine of collateral estoppel holds generally that a litigant should have only one opportunity to litigate an issue. *See Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir. 1994); *Village of Round Lake Beach v. Sams*, 421 N.E.2d 1008, 1013 (Ill. App. Ct. 1981). If in the course of Vela's criminal proceeding it was determined that probable cause existed for his arrest, and Vela had a full and fair opportunity to litigate the issue, this would bar his claim against Davis under 42 U.S.C. § 1983. *See Currier v. Baldridge*, 914 F.2d 993, 995 (7th Cir. 1990). Importantly, under Illinois law a criminal conviction is prima facie evidence of the facts upon which the conviction is based  *See Bay State Ins.Co. v. Wilson*, 451 N.E.2d 880, 882 (Ill. 1983); *Thornton v. Paul*, 384 N.E.2d 335, 343 (Ill. 1978).

The Court turns next to Vela's claim against Sulsberger. Claims brought pursuant to 42 U.S.C. § 1983, when involving pretrial detainees, arise under the Fourteenth Amendment and not the Eighth Amendment. *See Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000). However, the United States Court of Appeals for the Seventh Circuit has held that "§ 1983 claims brought under the Fourteenth Amendment are to be analyzed under the Eighth Amendment test." *Henderson v. Sheahan*, 196 F.3d 839, 844 n.2 (7th Cir. 1999). *See also Mathis v. Fairman*, 120 F.3d 88, 91 n.3 (7th Cir. 1997) (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)) ("The rights of a pre-trial detainee under the due process clause of the Fourteenth Amendment are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'"). When a prisoner brings an excessive force claim, a court's task "is to determine 'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Lunsford v. Bennett*, 17 F.3d 1574, 1581 (7th Cir. 1994) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). "Whether the defendants' actions were done in a malicious and sadistic manner to cause harm is a strict and fairly high threshold. Factors relevant to [the] inquiry include the nature and extent of the harm, the need for force, the threat to the safety of staff and inmates, and the extent of the injury inflicted on the prisoner." *Id*. (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). "Infliction of pain that is 'totally without penological justification' is *per se* malicious." *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004) (quoting *Hope v. Pelzer*, 536 U.S. 730, 737 (2002)). Still, "not every 'malevolent touch by a prison guard' gives rise to a federal cause of action, even if the use of force in question 'may later seem unnecessary in the peace of a judge's chambers.'" *Outlaw v. Newkirk*, 259 F.3d 833, 838 (7th Cir. 2001) (quoting *Hudson*, 503 U.S. at 9). Thus, a claim for the use of excessive force "cannot be predicated on a *de minimis* use of force" and

"[i]nstead, the quantum of force required for a constitutional violation is that which is 'repugnant to the conscience of mankind.'" *Fillmore*, 358 F.3d at 504 (quoting *Hudson*, 503 U.S. at 10). Significantly, however, a prisoner claiming use of excessive force need not establish serious bodily injury, because otherwise the Constitution "would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson*, 503 U.S. at 9.

To the extent Vela is attempting to assert a constitutional claim against Sulsberger based on Sulsberger's alleged use of racially derogatory language to Vela, such a claim must necessarily fail. It is well settled that a state officer's use of rude and even racist language to a prisoner does not violate the Constitution. *See Antoine v. Uchtman*, 275 Fed. Appx. 539, 541 (7th Cir. 2008) (holding that racist and threatening statements by state prison guards in retaliation for a prisoner's filing of grievances did not violate the prisoner's constitutional right to speak and to petition the government for redress of grievances, and noting that "the Constitution does not compel guards to address prisoners in a civil tone using polite language."); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.") (collecting cases); *Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987) ("Defamation is not a deprivation of liberty within the meaning of the due process clause. No more is a derogatory racial epithet.") (citations omitted). On the other hand, an official's credible threat of physical harm to a prisoner may rise to the level of a constitutional violation. *See, e.g., Northington v. Jackson*, 973 F.2d 1518, 1523-24 (10th Cir. 1992) (a prisoner's allegation that a guard put a gun to his head and threatened to shoot him stated an Eighth Amendment claim); *Burton v. Livingston*, 791 F.2d

97, 100-01 (8th Cir. 1986) (a prison guard pointed a gun at a prisoner, cocked it, and threatened to shoot). Also, allegations that state actors physically beat an unresisting prisoner obviously set out a claim for use of excessive force. *See, e.g., Hill v. Shelander*, 992 F.2d 714, 718 (7th Cir. 1993) (allegations that a prison guard physically pulled a prisoner out of his cell by the prisoner's shoulder and hair, slammed the prisoner's head against the bars of an adjacent cell, and struck the prisoner twice in the face and kneed the prisoner in the groin violated clearly established Eighth Amendment standards). Accordingly, Vela's allegations that Sulsberger put his gun to Vela's head and threatened to kill Vela, as well as Vela's allegations that Sulsberger punched him in the stomach and groin at a time when Vela was not resisting Sulsberger, are sufficient to state a constitutional claim against Sulsberger.

The Court turns at last to Vela's claim against Louisville. It appears that Vela is under the mistaken impression that Sulsberger is an agent of Louisville, so that Louisville is vicariously liable for Sulsberger's conduct. This view is wrong for two reasons. First, under Illinois law, sheriffs are independently elected county officers, not officers of cities, villages and incorporated towns. *See Wemple v. Illinois State Police*, No. 05-3034, 2005 WL 2001150, at *3 (C.D. Ill. Aug. 8, 2005) (citing Ill. Const. art. VII, § 1); *Madison Two Assocs. v. Pappas*, 884 N.E.2d 142, 151 (Ill. 2008). *Accord Miskovich v. Independent Sch. Dist. 318*, 226 F. Supp. 2d 990, 1027-28 (D. Minn. 2002) (a city was not liable for any constitutional violations resulting from the participation of its employees in a hostage-rescue training exercise at a public high school, in which county employees allegedly seized staff members who were unaware of the exercise and used excessive force). Second, liability under 42 U.S.C. § 1983 is premised upon active participation in a deprivation of constitutional rights. Thus, "[t]he doctrine of *respondeat superior* does not apply

to § 1983 actions" and "to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). Therefore, a municipality can be liable under Section 1983 only if the municipality itself, through a policy or custom, deprives a person of constitutional rights. *See Monell v. Dept. of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *Woods v. City of Mich. City, Ind.*, 940 F.2d 275, 278 (7th Cir. 1991). Municipal liability can be found under three circumstances: (1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with final policy-making authority. *See Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005); *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000); *Baskin v. City of Des Plaines*, 138 F.3d 701, 704-05 (7th Cir. 1998). In this instance Vela alleges none of the circumstances under which municipal liability may be found as to Louisville pursuant to Section 1983. Accordingly, Vela's Section 1983 claim against Louisville will be dismissed.[2]

---

2. It perhaps is worth pointing out also that a plaintiff seeking to impose 42 U.S.C. § 1983 liability on a municipality for an unconstitutional policy or custom generally must allege something more than his or her own isolated experience. *See Gustafson v. Jones*, 117 F.3d 1015, 1022 (7th Cir. 1997) (citing *Board of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404 (1997)) ("isolated incidents" of unconstitutional conduct do not show a policy or custom); *Zubek v. City of Chicago*, No. 04 C 5399, 2006 WL 1843396, at *5 (N.D. Ill. July 5, 2006) ("A plaintiff must allege a specific pattern or series of incidents that support the general allegation of a custom or policy; alleging one specific incident will not suffice. Likewise, a plaintiff's own isolated experiences are insufficient to establish custom.") (citation omitted). Nothing in the allegations of Vela's complaint, apart from those concerning his own isolated experience, suggests that Louisville maintains an unconstitutional policy or custom.

To conclude, it is hereby **ORDERED** that Vela's claims against Defendants **DAVIS** and **VILLAGE OF LOUISVILLE** are **DISMISSED with prejudice**. It is **further ORDERED** that the Clerk of Court shall prepare for Defendant **SULSBERGER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Order to Sulsberger's place of employment as identified by Vela. If Sulsberger fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within **thirty (30) days** from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Sulsberger, and the Court will require Sulsberger to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

It is **further ORDERED** that, if Sulsberger no longer can be found at the work address provided by Vela, the employer shall furnish the Clerk of Court with Sulsberger's current work address, or, if not known, Sulsberger's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the Court's files or disclosed by the Clerk.

It is **further ORDERED** that Vela shall serve upon Sulsberger (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Vela shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Sulsberger or counsel. Any paper that has not been filed with the Clerk of Court or that fails to include a certificate of service will be disregarded by the Court.

It is **further ORDERED** that Sulsberger shall timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2) of the Local Rules of the United States District Court for the Southern District of Illinois, this action is **REFERRED** to United States Magistrate Judge Donald G. Wilkerson for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to Magistrate Judge Wilkerson for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), **should all the parties consent to such a referral**.

Finally, Vela is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and any opposing party informed of any change in his address; the Court will not independently investigate Vela's whereabouts. This shall be done in writing and not later than **seven (7) days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of Court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED: January 30, 2012

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge